RECEIVED
APR 14 2025
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
APR 15 2025
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DARKO PAVLOVSKI

              Plaintiff(s),

v.

FRONTIER AIRLINES INC.

              Defendant.

---

Case No. 24-cv-04452

**PLAINTIFF'S MEMORANDUM IN LAW**

Plaintiff, in support of his Complaint, presents the Court with the below memorandum in law:

## RIGHT TO TRAVEL AND XIV AMENDMENT

The constitutional "right to travel" embraces at least three different components: (1) it protects the right of a citizen of one state to enter and to leave another state; (2) it protects the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, it protects the right to be treated like other citizens of that state. U.S.C.A. Const. Art. 4, § 2, cl. 1; Amend. 14, § 1. Frontier has not allowed the Plaintiff utilize his right to travel, by restraining him in Denver.

The word "travel" is not found in the text of the Constitution. Yet the "constitutional right to travel from one State to another" is firmly embedded in our jurisprudence. *United States v. Guest*, 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). Indeed, as Justice Stewart reminded us in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the right is so important that it is "assertable against private interference as well as governmental action ... a virtually unconditional personal right, guaranteed by the Constitution to us all." This means that the right to travel and the breach of XIVth Amendment can be also claimed against private parties. Not only the state/government.

It was the right to go from one place to another, including the right to cross state borders while en route, that was vindicated in Edwards v. California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), which invalidated a state law that impeded the free interstate passage of the indigent. We reaffirmed that right in United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239

(1966), which afforded protection to the " 'right to travel freely to and from the State of Georgia See Saenz v Roe, 526 U.S. 489, 119 S. Ct. 1518, 143 L. Ed. 2d 689, 1999 U.S. In our case, Frontier has denied us to go from one place to another, as we wish. And I understand we could have come as we did, with another carrier. But, Justice delayed and Justice denied.

The right of "free ingress and regress to and from" neighboring States, which was expressly mentioned in the text of the Articles of Confederation,13 may simply have been "conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created." Id., at 758, 86 S.Ct. 1170. See *Saenz v Roe*, 526 U.S. 489, 119 S. Ct. 1518, 143 L. Ed. 2d 689, 1999 U.S., Same, Frontier has prevented free regress from state of CO and free ingress in the state of MN, as desired. Again, Justice delayed is Justice denied.

'The constitutional right to travel from one State to another * * * has been firmly established and repeatedly recognized.' United States v. Guest, 383 U.S. 745, 757, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239. This constitutional right, which, of course, includes the right of 'entering and abiding in any state in **1336 the Union,' Truax v. Raich, 239 U.S. 33, 39, 36 S.Ct. 7, 9, 60 L.Ed. 131, is not a mere conditional liberty subject to regulation and control under conventional *643 due process or equal protection standards.1 '(T)he right to travel freely from State to State finds constitutional protection that is quite independent of the Fourteenth Amendment.' United States v. Guest, supra, at 760, 86 S.Ct. at 1179, n. 17.2 As we made clear in Guest, it is a right broadly assertable against private interference as well as governmental action.3 Like the right of association, NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, it is a virtually unconditional personal right,4 guaranteed by the Constitution to us all. See *Shapiro v. Thompson*, 394 U.S. 618 (1969). This again states thatUNITED STATES v. GUEST, 383 U.S. 745 (1966) the right is actionable against private interference. For me, the reason is obvious, because the right to travel is a constitutional right.

United States v. Guest, 383 U.S. 745 (1966), was a landmark decision of the US Supreme Court authored by Justice Potter Stewart, in which the court extended the protection of the 14th Amendment to citizens who suffer rights deprivations at the hands of private conspiracies, where there is minimal state participation in the conspiracy. The Court also held that there is a Constitutional right to travel from state to state.While the majority avoided the question of whether Congress, by appropriate legislation, has the power to punish private conspiracies, Justice Clark, writing in concurrence, asserted that "there now can be no doubt that the specific language of §5 empowers the Congress to enact laws punishing all conspiracies - with or without state action - that interfere with 14th Amendment rights." Justice Hugo Black and Justice Abe Fortas joined Clark's concurrence. See *UNITED STATES v. GUEST*, 383 U.S. 745 (1966) Here, the minimal government's participation is the FAA which has allowed and continues to allow this Airline's carriers discretionary long arm and foot to kick people as desired…

A second possible constitutional basis for the right to move among the States without interference is the Commerce Clause. When Mr. Justice Washington articulated *768 the right in Corfield, it was in the context of a state statute impeding economic activity by outsiders, and he

cast his statement in economic terms. 4 Wash.C.C., at 380—381. The two concurring Justices in Crandall v. State of Nevada, supra, rested solely on the commerce argument, indicating again the close connection between freedom of commerce and travel as principles of our federal union. See Id. The commerce clause is just another reason why the XIVth amendment is extended to private parties that do transport of people.

Moreover, it is also well settled in our decisions that the federal commerce power authorizes Congress to legislate for the protection of individuals from violations of civil rights that impinge on their free movement in interstate commerce. Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201; Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302; **1179 Boynton v. Commonwealth of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206; Heart of Atlanta Motel v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258; Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290.

## NEGLEGENCE

This court, long ago, in 1883 has stated, "*...because this railroad company has engaged, among other things, to convey passengers; and, as far as passengers are concerned, the defendant, being in the business of conveying them, is bound to exercise a high degree of care and diligence towards them with regard to providing them with safe transportation.*" Secord v. St. Paul, M. & M. Ry. Co., 5 McCrary 515 (1883). At that time airlines carries were not in business. Accordingly, this law still applies today to all carriers, including the air carriers. In other words, Frontier owes Defendant and all their passengers duty of care of high degree and diligence with regards providing them safe transportation. The word "Diligence" in American Heritage Dictionary is interpreted as: 1. Earnest and persistent application to an undertaking; steady effort; assiduity. 2. Attentive care; heedfulness. Removing a passenger with a baby that has absolutely complied to all and any requests by the flight attendant and the supervisor, does not comply to the work "Diligence" as earnest, steady effort with attentive care to safely transport the Plaintiff.

Another point is that the court above requires "Safe transportation" by the carriers. The word safe is only an adverb, as it describes "Transportation". Defendant per the law above is first required to provide transportation, and then it is required to do so "Safely". But, how can the Defendant provide the "Safe transportation", if it has failed to provide transportation at all? So, the law does not only talk about safe transportation as free of accidents; but, also as to diligent, earnest steady effort with attentive care to transport the Plaintiff.

The question of whether a duty of care exists in a particular relationship is a question of law. Summit Recovery, LLC v. Credit Card Reseller, LLC, Civ. No. 08–5273, 2010 WL 1427322, at

*3 (D.Minn. Apr. 9, 2010). For purposes of a negligent misrepresentation claim, certain legal relationships give rise to a duty of care, including accountant/client, attorney/client, and fiduciary relationships involving guardians, executors, and directors of corporations. Williams v. Smith, 820 N.W.2d 816 (Minn.2012). When a relationship is not one of the aforementioned types, a court may still find that a duty of care exists based on the consideration of several factors, including (1) whether the relationship is of a type that supports recognizing a duty of care, (2) whether the defendant has special knowledge or expertise indicative of a special legal relationship, and (3) whether public policy reasons warrant imposing a duty of care on the relationship. See id. at 816–19. Here the Defendant has the special expertise and the public policy support the court finding that such a relationship exist where the airline has duty of care to its passengers.

As explained by the Minnesota Supreme Court in Williams v. Smith, 2"[t]he question of whether a duty of care exists in a particular relationship is a question of law, which [the] court determines de novo."3Moreover, the existence of a duty of care is a threshold requirement, without which liability cannot attach.4According to the Court, "if a duty exists in a given case, it is derived from the legal relationship between the parties and a determination that the plaintiff's interests are entitled to legal protection against defendant's conduct."5The Court has declined to adopt a negligent misrepresentation claim "in all contexts,"6opting instead to recognize that "conduct actionable against one class of defendant[s] is not automatically actionable against another class of defendants." This **means that it is question of law, and its always a new situation, even if the actors are the same at the same circumstances just different issues…**

**The Court concluded that because the legal relationship between Williams and Smith was not the type of relationship entitled to legal protection, no duty of care against negligent misrepresentation was owed. The Court provided three reasons to support its conclusion: First, their relationship in negotiating potential employment was not a professional, fiduciary, or special legal relationship in which one party had superior knowledge or expertise.10**

**Moreover, Smith did not have the type of superior knowledge or expertise typically indicative of a special legal relationship; instead, the parties stood on equal footing regarding the scope of Smith's authority in negotiating a prospective employment relationship, and the scope of Smith's authority was equally available to both parties.12**

Airlines are classified as common carriers, meaning they owe a heightened duty of care to passengers. Courts often hold airlines to stricter standards in assuring passenger safety, making it easier for injured parties to prove liability in cases involving negligence or misconduct.

As "common carriers," airlines are subject to a higher standard of care than ordinary businesses. This means they must act with a high degree of care and vigilance to protect passengers from

harm. Defendant however, acted very recklessly when removing parents with a baby for simply asking question and trying to state their own right; and still complied with all request from the Defendant.

## DISCRIMINATION

a) PERSONS IN AIR TRANSPORTATION.-An air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry.
https://uscode.house.gov/view.xhtml?req=granuleid:USC-prelim-title49-section40127&num=0&edition=prelim#:~:text=%C2%A740127.,religion%2C%20sex%2C%20or%20ancestry.

Defendant gives presentation on how adults should seat in times of turbulence (Seats not declined, fasten seatbelts). Same during take off and landing. However, it has given no instruction on how to protect the children, especially the infants; but also those who are young and little enough to fly off the seat belt; but are required to have their own seat (referring to children older than 2 years)

In Wills v. Trans World Airlines, supra, the district court pointed out that neither the statute, Title 49 U.S.C.A. § 1374(b), nor any Congressional records give any guide lines with respect to the terms "undue or unreasonable preference" and "unjust discrimination" (200 F.Supp. at 363). However, analogous provisions in other Federal Acts involving discrimination have been interpreted to mean "discrimination in all its forms." Dixie Carriers v. United States, 351 U.S. 56, 60, 76 S. Ct. 578, 100 L. Ed. 934 (1956). The court in Wills continued, stating, "what is here condemned is any unwarranted interference with a passenger's right to accommodations aboard a particular flight, * * *." Wills v. Trans World Airlines, Inc., 200 F. Supp. at 365 (emphasis added). AT: Williams v. Transworld Airlines, Inc., 369 F. Supp. 797 (S.D.N.Y. 1974)

THE COURT in Williams Id. concluded: "2. Defendant TWA's refusal to transport plaintiff under the circumstances of this case was not arbitrary, unreasonable or motivated by racial or political prejudice", THIS means that the court lives space for action against airlines when the passenger is removed or not allowed transportation due to carrier's arbitrary, unreasonable or prejudiced/discrimination based actions. The court does not say, "The carrier cannot be sued for discrimination/prejudice or for arbitrary or unreasonable actions."

THERE, Plaintiff Williams was indicted for alleged kidnapping in North Carolina. Next, the Courts' facts say, """WILLIAMS ALLEGEDLY HAS POSSESSED A LARGE QUANTITY OF FIREARMS, INCLUDING A .45 CALIBER PISTOL WHICH HE CARRIES IN HIS CAR. HE HAS PREVIOUSLY BEEN DIAGNOSED AS SCHIZOPHRENIC AND HAS ADVOCATED AND THREATENED VIOLENCE. WILLIAMS SHOULD BE CONSIDERED ARMED AND

EXTREMELY DANGEROUS.'" However, the Plaintiff had no warrant against him nor the Defendant had information that he had Pistol or that was considered extremely dangerous. As such, Defendant's actions were unreasonable.

WILLIAMS states it was a first case impression case. It discusses the Title 49 U.S.C.A. § 1374. which is now replaced with 49 USC 40127 (a) and (b). Accordingly, this court faces the first case impression of interpreting the later law. The Williams court states, "In Wills v. Trans World Airlines, supra, the district court pointed out that neither the statute, Title 49 U.S.C.A. § 1374(b), nor any Congressional records give any guide lines with respect to the terms "undue or unreasonable preference" and "unjust discrimination" (200 F.Supp. at 363). However, analogous provisions in other Federal Acts involving discrimination have been interpreted to mean "discrimination in all its forms." Dixie Carriers v. United States, 351 U.S. 56, 60, 76 S. Ct. 578, 100 L. Ed. 934 (1956). The court in Wills continued, stating, "what is here condemned is any unwarranted interference with a passenger's right to accommodations aboard a particular flight, * * *." Wills v. Trans World Airlines, Inc., 200 F. Supp. at 365 (emphasis added)." This means that 49 USC 40127 also applies to "discrimination in all its forms", same as Dixie court found, or even including discrimination on children.

Here, when searching for the Defendant involvement in litigations 75% of Frontier cases in MN Courts are related to children. Per statistical evidence, Defendant is discriminating on children.

## XIV AMENDMENT

42 U.S. Code § 1983 says, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress"

ONE court said, "The allegations of the complaint assert in substance that the individual defendants (officers or officials of Pennsylvania or New York) acting "under color of law" or "pretense" of law deprived the plaintiffs of liberty without due process of law. The plaintiffs have stated a valid cause of action rising under R.S. Section 1979 insofar as the individual defendants. are concerned." *Picking et al. v. Pennsylvania R. Co.*, 151 F.2d 240, 253 (3rd Cir. 1945). There, the corporate defendant was The Pennsylvania Railroad Company, and was not an agency of any state. It was a privately owned railroad corporation. Furthermore, the court states, "R.S. Section 1979 applies to "every person." We can imagine no broader definition". R.S. § 1979, 8 U.S.C.A. § 43 is now replaced in full form by above mentioned 42 U.S. Code § 1983. As such, 42 U.S.

Code § 1983 applies to the present case. When discussing the responsibility of the individual parties, according to the theory of Respondeat Superior, which translates to "let the master answer," employers are liable for the torts (wrongful acts) committed by their employees while acting within the scope of their employment. In this case, both the Attendant B and Supervisor Pam acted during their time of employment and at the place of their employment. They also took their action for the benefit of their employer, Frontier.

## PUNITIVE DAMAGES

Plaintiff understands that the count of Punitive damages cannot stand on its own and can only be awarded if the Defendant has breached some other count. Plaintiff, just does not know at whit time later, he needs to plead it; so, he just puts it out there, so the Court is aware of it.

Plaintiff, will not bother the court with memorandum at this time.

## FIRST AMENDMENT

To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution. St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481, 487 (8th Cir.2006). Rather, the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute. Self-censorship can itself constitute injury in fact. See Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 393 (1988).

To establish injury in fact for a First Amendment challenge to a state statute, "the plaintiff needs only to establish that he would like to engage in arguably protected speech, but that he is chilled from doing so by the existence of the statute. Self-censorship can itself constitute injury in fact." Id. "The relevant inquiry is whether a party's decision to chill his speech in light of the challenged 781*781 statute was `objectively reasonable.'" Id. (quoting Zanders v. Swanson, 573 F.3d 591, 594 (8th Cir.2009)).

"Although not beyond restraint, strict scrutiny is applied to any regulation that would curtail it." Republican Party of Minn. v. White, 416 F.3d 738, 749 (8th Cir.2005) (en banc) (White II); see also McIntyre, 514 U.S. at 347, 115 S.Ct. 1511.
Further, "[o]f bedrock importance is the principle that the First Amendment's protections extend beyond expressions 'touching upon a matter of public concern.' " State v. Tracy, 130 A.3d 196, 201 (Vt. 2015) (quoting Connick v. Myers, 461 U.S. 138, 147 (1983)).

## BREACH OF CONTRACT

The Minnesota Supreme court defined the elements of a breach-of-contract claim as "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent... and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 833 (Minn. 2011) We have contract where Defendant was to transport Plaintiff from Denver to Minneapolis and the Defendant breached that contract, by removing the Plaintiff from the airplane for no reason.

A damage award in a breach of contract action is intended to place the nonbreaching party "in the position in which he would be if the contract were performed." Lesmeister v. Dilly, 330 N.W.2d 95, 102 (Minn.1983); see also Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 472 (Minn.1994).

The existence of a contract, as well as its terms, are issues for the factfinder. Peters v. Mutual Benefit Life Ins. Co., 420 N.W.2d 908, 913 (Minn.App.1988) (citations omitted).

## SECTION 5/UNFAIR & DECEPTIVE ACTS

Section 5 of the Federal Trade Commission Act (hereinafter the "FTC Act") provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C.A. § 45(a)(1).

Only the FTC can enforce the FTC Act, and the Act does not provide for any private right of action. *Fulton v. Hecht*, 580 F.2d 1243, 1248 (5th Cir. 1978). Based on finding this law, the Plaintiff is revoking/dismissing this count.

## COURSE OF PERFORMANCE

MN Statute, 336.1-303 COURSE OF PERFORMANCE, COURSE OF DEALING, AND USAGE OF TRADE says:.
(a) A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if:
(1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and

(2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.
(b) A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

Plaintiff, previously, during the same vacation, was flying with Frontier from Denver to Puerto Vallarta and from Puerto Vallarta to Denver. He was flying with the same baby F.P. in the same carrier. No attendant or anyone from the airline made any remarks. This means that course of performance was established and Frontier breached that contract when suddenly changed the terms.

Same, on his trip from Denver to Minneapolis with United and from Minneapolis to Denver with Sun Country, no person objected. This only means that Frontier acted opposite of the airline industry.

## GOOD FAITH AND FAIR DEALING

Every contract includes as part of the implied covenant of good faith and fair dealing an "implied condition that each party will not unjustifiably hinder the other from performing." In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995); Zobel & Dahl Constr., 356 N.W.2d 42, 46 (Minn. 1984); Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254, 268 (Minn. Ct. App. 1996). Wrongfully repudiating a contract or thwarting the other's performance by affirmatively blocking the happening of a condition precedent each constitute separate violations of the implied covenant. Frontier repudiated the contract without a just cause, as Plaintiff was following all instructions.

One court stated that the obligation of good faith is implied in all contracts, and repeated the familiar doctrinal rhetoric: "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Seidenberg v. Summit Bank*, 791 A.2d 1074 (N.J. Super. Ct. App. Div. 2002)(quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997); *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965). Defendant did not allow Plaintiff to receive the fruits of the contract.

In the same vein, various courts have stated that a party must exercise discretion reasonably and with proper motive when that party is vested with the exercise of discretion under a contract. Beraha, supra, 956 F.2d at 1443 (finding implied covenant of good faith and fair dealing limits controlling party's discretion; controlling party must exercise discretion reasonably with proper motive, not arbitrarily, capriciously, or in manner inconsistent with reasonable expectations of parties); *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 232 (2d Cir.1991) (stating

that even if controlling party acted within bounds of discretion, controlling party would be in breach of implied covenant if it acted unreasonably); Amoco Oil Co. v. Ervin, 908 P.2d 493, 499 (Colo.1996) (finding implied covenant of good faith and fair dealing violated when discretion exercised unreasonably and with bad motive notwithstanding that one party has discretionary authority to determine rental charges under terms of contract); Abbott v. Amoco Oil Co., 249 Ill.App.3d 774, 189 Ill.Dec. 88, 619 N.E.2d 789, 795 (1993) (observing that duty of good faith and fair dealing limits manner of exercise of discretion by party vested with discretion; discretion must be exercised reasonably with proper motive, not arbitrarily, capriciously, or inconsistent with reasonable expectations of parties). Frontier used its discretions unreasonably, arbitrary and inconsistent with the reasonable expectation of the Plaintiff.

"See Corthell v. Summit Thread Co., 132 Me. 94, 167 A. 79, 81 (1933) ("a reservation to either party of an unlimited right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory") (emphasis in original); Restatement (Second) of Contracts §§ 2 cmt. e, 77 & cmt. a (1981); Joseph M. Perillo & Helen Hadjiyannakis Bender, 2 Corbin on Contracts § 5.28 (1995)." See Snow v. BE & K CONST. CO., 126 F. Supp. 2d 5 (D. Me. 2001)

"Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith . . . fill the gap. They do not block use of terms that actually appear in the contract. See, *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F2d 1351, 1357 (7thCir 1990) (internal citations omitted).

Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.   But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.   A complete catalogue of types of bad faith is impossible, but the following types are among those which had been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. Restatement (Second) of Contracts § 205 cmt. D.

Every contract contains an implied covenant of good faith and fair dealing which prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract. Restatement (Second) of Contracts, § 205 (1981).[7] 3 A. Corbin, Contracts § 541, at 97 (1960); 5 S. Williston, A Treatise on the Law of Contracts § 670, at 159 (3rd Ed.1961). Defendant failed to prevent injuries of Plaintiff and did not let him receive the benefits of the contract. Also, "every contract contains an implied covenant of good faith and fair

dealing." *White Stone Partners L.P. v. Piper Jaffray Cos., Inc.*, 978 F. Supp. 878, 880-81 (D. Minn. 1997).

Good faith is derived from the transaction and conduct of the parties. Its meaning varies with the context and emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Restatement (Second) of Contracts, Id, Comment (a) Plaintiff's justified expectations were not materialized due to unjust, arbitrary and bad faith by the Defendant.

Although the Minnesota Supreme Court has not explicitly so held, it is this Court's judgment that the Minnesota Supreme Court would require a party to exercise good faith in exercising an unlimited discretionary power over a term of the contract if necessary to effectuate the parties' intent and to save a contract from being held to be illusory. See Farnsworth on Contracts § 7.17 at 370 (1996 Supp.) (courts often supply a term in such circumstances). See *White Stone Partners v. Piper Jaffray Companies, Inc.*, 978 F. Supp. 878 (D. Minn. 1997). Here we see yet another case that talks about limiting one discretionary powers, or to be used with diligence inorder to effectuate the parties' intent. Defendant used their powers unlimited without any consideration of the Plaintiff's intent for participating in the contract.

The new formulation may have more appeal to modern taste since it purports to rely directly upon considerations of morality and public policy, rather than achieving those objectives obliquely, by honoring the reasonable expectations created by the autonomous expressions of the contracting parties. See *Tymshare, Inc. v. Covell* 727 F.2d 1145 (D.C. Cir. 1984). Defendant has not honored Plaintiff's reasonable expectations although Plaintiff has performed fully at all times.

In K.M.C. Co. v. Irving Trust Co., 757 F.2d 752 (6th Cir. 1985) the Sixth Circuit invigorated the field of "lender liability" by applying the duty to a bank's decision to refuse further advances to a borrower in financial difficulties. Without giving any notice, the lender dishonored checks drawn by the borrower, and the borrower's business soon collapsed. Though the text of the parties' loan agreement seemed to place no limits on the lender's discretion to grant or deny a request for further credit, the borrower provided expert testimony stating that a reasonable lender would at least have given notice of the denial so as to give the borrower time to find alternative sources of financing. Having been instructed to impose liability if it found the lender had acted unreasonably when it exercised its discretion to deny further credit, the jury found a violation of the implied covenant of good faith and fair dealing, and awarded the borrower damages. All this cases further state that one with lots of power should use their discretion carefully or will be found as a violation of the duty of good faith. Defendant did exactly that, used their powers arbitrary and in bad faith.

In Minnesota, the implied covenant of good faith and fair dealing between parties to a contract provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. In other words, "parties to a contract cannot unjustifiably impede the other party from performing its obligations under the contract." Semler Const., Inc. v. City of Hanover, 667 N.W.2d 457, 467 (Minn. Ct. App. 2003)

See, *Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404 (Mo.Ct.App. 1996) (covenant of good faith and fail dealing prevents one party to the contract from exercising judgment conferred by express terms of the agreement in such a mariner that it evades the spirit of the transaction or denies the other party the expected benefit of the contract)

Others say that the duty prevents parties from frustrating the purpose of the contract, Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 826 P.2d 710, 728 (Cal. 1992). Still other courts say that the duty prevents a party from upsetting the other party's reasonable expectations. See Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1444 (7th Cir. 1992)

Professor Chunlin Leonhard, contends that courts adjudicating claims under the doctrine should impose liability where a reasonable person would find the conduct unacceptable, and that courts should have the power to impose tort damages in the event of a breach of this negligence standard. @ Subprime Mortgages and the Case for Broadening the Duty of Good Faith, 45 U.S.F. L. REV. 621, 622 (2011).

Just as the equal protection norm prevents government actors from classifying people unfairly, so the basic conduct norm of good faith and fair dealing prohibits unreasonable exercises of contractual discretion. Conceivably, good faith and fair dealing really stands for two norms: a norm of honesty and a norm of reasonableness. See Thomas A. Diamond & Howard Foss, **Proposed Standards for Evaluating When the Covenant of Good Faith and Fair Dealing Has Been Violated: A Framework for Resolving the Mystery,** 47 HASTINGS L.J. 585, 600–01 (1996)

The duty, one court recently said, is breached when a party "exercises discretion authorized in a contract in an unreasonable way." Montanez v. HSBC Mortg. Corp. (USA), 876 F. Supp. 2d 504, 513 (E.D. Pa. 2012) (quoting Phila. Plaza-Phase II v. Bank of Am. Nat'l Trust & Sav. Ass'n, No. 3745, 2002 WL 1472337, at *6 (Pa. Ct. C.P. June 21, 2001)).

The determination of what constitutes good faith necessarily involves factual findings. It is gor the trier of fact to evaluate the credibility of a claim of honesty in fact and in doing so to take account of the reasonableness or unreasonableness of the claim. Tonka Tours Inc. v. Chadima, 372 N.W.2d 723, 728 (Minn.1985).

Seems like most cases talk about careful and diligent and reasonable use of discretionary powers so one expectations are not frustrated. If a party in MN is accused of breach of duty of good faith, the jury is the one to decide the reasonableness of the actions when using that discretion. Jury should find how Frontier used its discretions, as this is starting to happen more and more in our daily life. See https://www.dailymail.co.uk/news/article-13577069/the-real-story-behind-mom-kicked-off-united-airlines-flight-for-misgendering-a-flight-attendant.html

## FIDUCIARY DUTY

A fiduciary relationship exists when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal." Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985) (quotation omitted). Manor v. Irvin O Buschkowsky Revocable TR, No. A05-2056, (Minn. Ct. App. Oct. 3, 2006). Defendant has superiority and the duties are of moral, social interest.

A fiduciary relationship can arise " 'when confidence is reposed on one side, and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal.' "Stark, 285 N.W. at 470…See, RBC Ordinarily, the existence of a fiduciary relationship is a fact question. Toombs v. Daniels, 361 N.W.2d 801, 809(Minn.1985); Minnesota Timber Producers Assoc. Inc. v.Am. Mut. Ins. Co., 766 F.2d 1261 (8th Cir.1985). Plaintiff has reposed his confidence in Defendant to find out that Defendant has not made any informative decision about carrying infants during flight.

A fiduciary relationship arises when one reposes confidence, faith and trust in the judgment, skill and advice of another. See Williams v. Griffin, 35 Mich. App. 179, 183, 192 N.W.2d 283, 285 (1971) This is a general definition of a fiduciary relationship, however, and variations can be found in different jurisdictions. See, e.g., In the Matter of Heilman's Estate, 37 Ill. App. 3d 390, 396, 345 N.E.2d 536, 540 (1976) (relationship exists when confidence is reposed on one side and domination and influence result on the other);

These cases state that Frontier owes Fiduciary duty to its passengers.

Thank you very much for your attention!

Yours sincerely,
Darko Pavlovski

*[signature]*
04/14/2025